UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUIS ARAMAS,

                        Plaintiff,

      v.

COMMISSIONER HEARING OFFICER A. POLIZZI, DIRECTOR OF INMATE DISCIPLINE AND SPECIAL HOUSE UNITS D. VENETTOZZI, *and* EMPLOYEE TIER ASSISTANT D. ZALTSMAN,

                        Defendants.

No. 18-CV-4106 (KMK)

OPINION & ORDER

---

Appearances:

Luis Aramas
Fallsburg, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
Terrance K. Derosa, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Luis Aramas ("Plaintiff") brings this pro se Action against Anthony Polizzi ("Polizzi"), Donald Venettozzi ("Venettozzi"), and Donna Zaltsman ("Zaltsman"; collectively, "Defendants"), alleging that Defendants violated Plaintiff's Fourteenth Amendment rights by restricting Plaintiff's privileges, including placing him in a Special Housing Unit ("SHU"), as punishment following a procedurally deficient hearing to adjudicate misconduct that was ultimately expunged from his record. (*See generally* Compl. (Dkt. No. 2).) Before the Court is

Defendants' Motion for Summary Judgment (the "Motion"). (Not. of Mot. (Dkt. No. 41).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts and procedural history are taken from Defendants' statements pursuant to Local Civil Rule 56.1 (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No.

43) and the admissible evidence submitted by the Parties.[1, 2, 3] The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks omitted).

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b).

"'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' . . . and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'" *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021); then quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (citing same principle).

However, because pro se litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), when a pro se litigant fails to submit a 56.1 statement in response to a motion for summary judgment, the Court may—and, in this case, will—"in its discretion opt to conduct an assiduous review of the record" in deciding the motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Thomas*, 2021 WL 5746207, at *1 n.1 (collecting cases); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of [the] [p]laintiff's pro se status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

[2] Although "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment," *Almonte v. Florio*, No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted), where a plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment purposes," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment").

"Here, Plaintiff's Complaint . . . includes a signed and dated verification page stating that Plaintiff declares the contents of those filings to be true under the penalty of perjury. . . . Therefore, the Court will accept for purposes of this Motion all admissible facts set forth in Plaintiff's Complaint . . . that are based on Plaintiff's personal knowledge and about which

3

Plaintiff "is an incarcerated state prisoner" who, in October 2015, "was incarcerated at Sullivan Correction Facility." (Defs.' 56.1 ¶¶ 1–2.)

"Plaintiff was issued two misbehavior reports at Sullivan Correctional Facility for incidents that occurred on 10/17/2015": one concerned "soliciting others to smuggle contraband drugs," and the other concerned "smuggling" and "being in possession of contraband on his body." (*Id.* ¶¶ 3–4.) Specifically, the Misbehavior Report states that Plaintiff "did solicit and conspire with several individuals," including another inmate and his then-wife, "to have contraband [in the form of narcotics] smuggled into him by way of the Inmate telephone

---

Plaintiff is competent to testify." *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *1 n.3 (S.D.N.Y. July 18, 2019) (collecting cases).

[3] "Local Civil Rule 56.2 provides that '[a]ny represented party moving for summary judgment against a party proceeding pro se shall serve and file as a separate document, together with the papers in support of the motion, the following "Notice to Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached.'" *Torres v. Bellevue S. Assocs. L.P.*, No. 16-CV-2362, 2020 WL 3377797, at *1 (S.D.N.Y. June 18, 2020) (italics omitted).

Here, Defendants filed and served their Statement pursuant to Rule 56.1. (Dkt. Nos. 42, 43.) Defendants then *attempted* to file a 56.2 notice to the docket but inadvertently filed a different notice. (*Compare* Dkt. No. 45 (labeled a 56.2 Notice, but in fact a notice of unpublished cases pursuant to Local Rule 7.2), *with* Dkt. No. 46 (labeled and in fact a 7.2 Notice).) Defendants' Declaration of Service, however, states that Defendants in fact served Plaintiff with the correct 56.2 Notice. (*See* Dkt. No. 47.)

"[F]ailure [to comply with Rule 56.2] may be grounds for denying a motion for summary judgment," *Tafuto v. N.Y. State Off. for Child. & Fam. Servs.*, No. 08-CV-8433, 2012 WL 4459803, at *4 (S.D.N.Y. Sept. 25, 2012) (citing *Zobe v. Benash*, No. 08-CV-3937, 2011 WL 5921570 (S.D.N.Y. Nov. 22, 2011)), and the Second Circuit has reversed a district court's granting of summary judgment where proper notice pursuant to Rue 56.2 was not provided, *see Nationstar Mortg., LLC v. Hunte*, 775 F. App'x 20, 21 (2d Cir. 2019) (summary order).

Accordingly, following discovery of this oversight, Defendants filed a letter with the Court reaffirming that Plaintiff was served via hard copy the proper 56.2 Notice, affixing photographs of time-stamped PDF and Microsoft Word files, emails to and from the New York Attorney General's office ("NYAG") employee who handled mailing the information to Plaintiff confirming mailing the 56.2, and a copy of the 56.2 notice itself. (*See* Dkt. No. 53.) Therefore, the Court finds that this inadvertent electronic mistake does not constitute a failure to comply with Local Rule 56.2, and the Court proceeds as if this error had not occurred.

4

system." (Decl. of Janice Powers ("Powers Decl."), Ex. E ("Misbehavior Reports") at 1 (Dkt. No. 44).) The Misbehavior Report goes on to say that Plaintiff's wife "voluntarily surrendered 1 balloons [sic] and 1 clear plastic wrap[;] both . . . contained a brown colored powder substance with an aggregate weight of 7.1 grams," which were "field tested and yielded a positive result for [h]eroin." (*Id.*) The Report also notes that "[t]he above information is supported by [Plaintiff's] phone calls . . . ." (*Id.*)

According to Plaintiff, on the day of the alleged incident, Plaintiff was searched and corrections officers "found some paper secreted" in Plaintiff's anus. (Powers Decl. Ex. D ("Aramas Tr.") 15:3–22.) Plaintiff attested to the fact that the paper was to treat his hemorrhoids. (*Id.* at 15:15–19.) Plaintiff also stated in his deposition that he was not called for a visit nor was he permitted to see his wife on the day of this incident. (*Id.* at 12:22–13:10.) Plaintiff was moved to SHU on the day of the incident. (*See* Defs.' 56.1 ¶ 5.)[4]

On October 27, 2015, ten days after the alleged misconduct occurred, a disciplinary hearing commenced to adjudicate the misconduct. (*Id.* ¶ 6.) The hearing concluded on Dec. 15, 2015. (*Id.*) "At the conclusion of the hearing, Plaintiff was found guilty of drug possession, 2 counts of smuggling, call forwarding/3rd party call, and visiting violation." (*Id.* ¶ 7.) As punishment, Plaintiff "was sentenced to forty-five (45) days in SHU, as well as ninety (90) days loss of packages, commissary, phone and one hundred twenty-two (122) days loss of visitation."

---

[4] Defendants write in their unopposed 56.1 statement that Plaintiff was only moved to SHU following the "issuance of *the* misbehavior report," singular, suggesting that only one report in fact prompted this move. (Defs.' 56.1 ¶ 5.) However, Defendants cite both reports to substantiate this assertion, suggesting that both reports prompted such a move. (*Id.* (citing Misbehavior Reports 1–2).) Only one such Report states that Plaintiff was moved to SHU, (*see id.* at 1), whereas the other Report states that Plaintiff was moved to the "Draft Dry Cell," (*id.* at 2). Nonetheless, this discrepancy does not bear on the ultimate issue at hand.

(*Id.* ¶ 8.) Because Plaintiff was in SHU from the date of the incident through his forty-five-day punishment, Plaintiff "was confined [in SHU] for a total of 104 days." (*Id.* ¶ 9.)

Inmates in SHU—including Plaintiff—are considered disciplinary inmates subject to certain restrictions. (*Id.* ¶ 7; *see also* 7 N.Y.C.R.R. § 301.2.) Accordingly, Plaintiff was allowed only one hour of recreational time daily, (*see* Defs.' 56.1 ¶ 11; *see also* 7 N.Y.C.R.R. § 304.3), given specific clothing, (*see* Defs.' 56.1 ¶¶ 11, 16; *see also* 7 N.Y.C.R.R. § 302.2(a)), afforded limited access to showers as well as the law library, (*see* Defs.' 56.1 ¶¶ 14–15; *see also* 7 N.Y.C.R.R. §§ 304.7, 304.5(a)), given the same food as other inmates albeit in a pre-apportioned, and therefore potentially lesser, amount, (*see* Defs.' 56.1 ¶ 12; *see also* , 7 N.Y.C.R.R. § 304.2), and prohibited from taking or receiving phone calls as well as giving or receiving packages, (*see* Defs.' 56.1 ¶¶ 17, 18; *see also* 7 N.Y.C.R.R. § 302.2(i)).

Following Plaintiff's restriction of privileges and confinement in SHU, Plaintiff's then-wife filed for divorce. (*See* Aramas Tr. 74:21–75:12.) Specifically, Plaintiff stated in his deposition that his divorce is "[b]ecause of what happened," stating that it ultimately harmed his "relationship with her, [his] marriage and [his] step kids." (*Id.* at 13:19–25.)

B. Procedural History

Plaintiff's Complaint was docketed May 8, 2018. (*See* Compl.) His request to proceed in forma pauperis was granted on June 15, 2018. (Dkt. No. 4.) Venettozzi and Polizzi were served on August 2, 2018. (Dkt. Nos. 8, 9.) Three days later, Venettozzi and Polizzi filed an Answer. (Dkt. No. 22.) That same day, Assistant Attorney General Janice Powers filed a letter with the Court accepting service on Zaltsman's behalf, (Dkt. No. 23), and similarly filed an Answer on Zaltsman's behalf, (Dkt. No. 24). Following Plaintiff's refusal to attend a pre-motion

conference, (*see* Dkt. No. 29), Defendants entered a proposed case management plan, (*see* Dkt. No. 31), which the Court adopted, (*see* Dkt. No. 32).

On September 15, 2021, Defendants filed the instant Motion, a Rule 56.1 Statement, and an attorney declaration with accompanying exhibits. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 42); Defs.' 56.1; Powers Decl.)

On October 27, 2021, the Court received a letter from Plaintiff dated October 8, 2021, requesting an extension of 60 days to file his reply. (Dkt. No. 48.) The Court granted Plaintiff's requested extension. (Dkt. No. 49.)

One week after Plaintiff's reply was due, Defendants requested that the Court consider the Motion fully submitted and oppose non-party intervention in light of Plaintiff's failure to file a timely opposition. (Dkt. No. 50.) The Court granted this request. (Dkt. No. 51.) Thus, the Motion is considered fully briefed.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 355 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

8

Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B.  Analysis

Plaintiff's claims sound in various forms of Fourteenth Amendment Due Process violations. (*See generally* Compl.) Specifically, Plaintiff claims that Polizzi, while serving as the hearing officer, called witnesses prematurely, denied Plaintiff's requests to call and recall witnesses, denied him access to witnesses, and failed to provide him with specific documentary

9

requests. (*See id.* at 20–26.)⁵ Plaintiff also claims that Zaltsman was an ineffective employee assistant. (*See id.* at 26–29.) Finally, Plaintiff claims that Venettozzi failed to "entertain and address petitioner's due process and constitutional rights violation." (*Id.* at 16.)

Defendants broadly argue that the punishment Plaintiff suffered did not rise to the level of a protected liberty interest such that any allegedly process-specific wrongs that resulted in such punishments do not give rise to a constitutional violation. (*See* Defs.' Mem. 4–7.) Further, Defendants argue that Venettozzi "is entitled to qualified immunity because the law is unclear as to whether an appeal officer has committed a constitutional violation by affirming a prison disciplinary decision that is later successfully challenged in an Article 78." (*Id.* at 7–9.)

### 1. Due Process

Undoubtedly, incarceration curtails an individual's rights. "But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). To that point, "[p]risoners may [] claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law." *Id.* at 556 (collecting cases); *see also Lebron*, 2019 WL 3239850, at *15 ("The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings." (citing *Wolff*, 418 U.S. at 563–72)).

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient

---

⁵ Because the Complaint and its exhibits do not use consistent pagination, the Court refers simply to the ECF-stamped pages in the top-right corner.

10

process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation, alteration, and quotation marks omitted). "An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Whitaker v. Super*, No. 08-CV-449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec. 14, 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "It is undisputed . . . that New York state law 'create[s] a liberty interest in not being confined to the SHU.'" *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004) (quoting *Welch v. Bartlett*, 196 F.3d 389, 394 n.4 (2d Cir. 1999)); *see also Colon v. Annucci*, No. 17-CV-4445, 2021 WL 3774115, at *6 (S.D.N.Y. Aug. 24, 2021) (noting that "[i]t is generally accepted that . . . New York State's statutory scheme" satisfies the first prong of this inquiry); *Edwards v. Mejia*, No. 11-CV-9134, 2013 WL 1092978, at *3 (S.D.N.Y. Mar. 15, 2013) ("New York state law creates a liberty interest in freedom from SHU confinement."). Therefore, in New York, a plaintiff confined in SHU implicates his liberty interest only if the specifics of his or her stay in SHU "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Zappulla v. Fischer*, No. 11-CV-6733, 2013 WL 1387033, at *6 (S.D.N.Y. Apr. 5, 2013) (alternation in original) (quoting *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam)); *see also Ortiz*, 380 F.3d at 654 ("Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)).

The Second Circuit has held that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*,

11

331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted). But the punishment's duration is "not the only relevant factor." *Palmer*, 364 F.3d at 64 (quoting *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003) (per curiam)). To the contrary, the Second Circuit "ha[s] explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Id.* (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) and *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)).

Eschewing strictly delineated rules, the Second Circuit has instead instructed that "'[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required.'" *Brown v. Venettozzi*, No. 18-CV-2628, 2019 WL 4194432, at *4 (S.D.N.Y. Sept. 4, 2019) (quoting *Palmer*, 364 F.3d at 64–65). Indeed, a confinement period within that range "is not necessarily evidence of deprivation of a liberty interest if the detainee fails to make specific allegations about the nature of the confinement, including time spent 'within the cell, hygienic conditions, access to programs, as well as other conditions.'" *Id.* (quoting *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009)). The Second Circuit has also suggested that "evidence of the psychological effects of prolonged confinement in isolation" may be helpful in developing the necessary record. *Howard*, 215 F.3d at 232.

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted).

With respect to the standard of evidence that must be shown to impose a restriction on a prisoner's liberty interest, "prison discipline decisions affecting an inmate's liberty interest cannot be 'imposed arbitrarily' but must be 'supported by some evidence in the record.'" *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "Judicial review of this 'some evidence' standard is narrowly focused": "it 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id*. (quoting *Hill*, 472 U.S. at 455–56).

Finally, "the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (ellipses in original) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

Taken in their entirety, Plaintiff's "allegations . . . fall short of alleging conditions involving 'more onerous' or 'atypical' conditions of confinement." *Brown*, 2019 WL 4194432, at *5. Plaintiff's Complaint lays out Plaintiff's frustrations with the grievance process rather than the conditions of confinement. (*See generally* Compl.) For example, in the Verification affixed to the Complaint, Plaintiff states that the four facts "germane" to his arguments concern the impartiality of his hearing officer to request witnesses and documents, the efficacy of his inmate assistant, and the evidence itself. (*See id.* at 18; *see also id.* at 20–33.)

Plaintiff's allegations of hardship throughout his confinement are found in his deposition. Specifically, Plaintiff complains of less food, (*see* Aramas Tr. 68:7 (noting "[s]maller portions"

of food served)), fewer showers, (*see id.* at 63:11–17 (noting that in general population, prisoners receive "three or four" showers a week, whereas in SHU, you "might get [th]em twice a week")), restricted time outside (*id.* at 70:3–15 (noting that in general population, prisoners receive up to nine hours outside, whereas those in "SHU only go to one hour")), limited socialization during recreational time (*id.* at 70:14–15 (noting that during recreation on SHU prisoners "can't congregate")), insufficient warm clothing for recreation (*id.* at 62:7–63:7), and restricted access to the law library and legal materials, (*id.* at 65:12–66:4). Additionally, Plaintiff suggested—without specifically leveling the accusation—that corrections officers working in SHU were prone to purposefully ignore inmates' requests for recreational time, particularly if the incarcerated person had filed a grievance concerning the other poor conditions. (*See id.* at 74:4–11.) Finally, Plaintiff avers some unspecified emotional harm throughout his SHU confinement, stating that he "went through a lot of oppression up there [in SHU], a lot of suffering." (*Id*. at 74:12–13.) This was a result of the psychological hardship of being unable to speak to his wife, who was implicated in this charge, that gave rise to feeling "more oppression on top of oppression" and prompting him to "cr[y] like crazy." (*Id.* at 74:3, 74:18.)

    Under applicable caselaw, Plaintiff's allegations regarding the physical attributes of his confinement do not comprise anomalous or substantially worse conditions, foreclosing one necessary factor of a due process claim. To date, the Second Circuit has declined to "delineate the precise contours of 'normal' SHU confinement," stating only that it is "it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Ortiz*, 380 F.3d at 655. In other words, other than the potential threat of withholding recreational activities, Plaintiff "makes no allegations about the conditions of his keeplock beyond the

withholding of privileges as described." *Thomas*, 2019 WL 1428365, at *5; *cf. Colon*, 2021 WL 3774115, at *6 ("The record provides no evidence to suggest that Plaintiff was subjected to anything but ordinary SHU conditions while he was placed in [administrative segregation]—and simply experiencing standard SHU conditions in the intermediate tier of analysis does not, by itself, establish a protected liberty interest."); *Keyes v. Annucci*, No. 18-CV-372, 2019 WL 4602240, at *13 (N.D.N.Y. Sept. 23, 2019) (observing that "loss of package, commissary, phone, and recreation privileges, and deprivation of access to . . . personal property" are "losses of privileges incident to the confinement of any prisoner in administrative segregation").

As for Plaintiff's psychological oppression, the Court is cognizant of and empathetic towards the "oppression" and harmful psychological effects he allegedly faced during his confinement. (Aramas Tr. 74:3.) However, "there is plenty of . . . psychological literature concerning the ill effects of solitary confinement" dating back decades. *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988); *accord Landman v. Royster*, 354 F. Supp. 1302, 1307 (E.D. Va. 1973) (relying on opinion testimony of a psychiatrist who found that "solitary confinement beyond a two or three week period would have a definite adverse effect upon most people"). Plaintiff does not state anything about his psychological hardship was *particularly* egregious or anomalous, thereby falling short of "*Sandin*'s atypical and significant hardship test." *Hanrahan*, 331 F.3d at 97 (quotation marks omitted); *cf. Sealey v. Giltner*, 197 F.3d 578, 589–90 (2d Cir. 1999) (stating that conditions in "SHU are doubtless unpleasant and somewhat more severe than those of general [prison] population, but the degree of incremental harshness, endured for 101 days, is not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Indeed, were Plaintiff's statements of generalized "oppression" held to satisfy the *Sandin* standard, nearly every inmate sent to SHU

would automatically have a protected liberty interest as a result of the mental anguish such confinement renders, an end result the Second Circuit expressly does not condone. *See, e.g.*, *Sealy*, 197 F.3d at 588–90 (finding no protected liberty interest notwithstanding the plaintiff's confinement in SHU); *Colon*, 2021 WL 3774115, at *6 (rejecting claims of psychological harms where the "[p]laintiff offered nothing aside from conclusory statements about psychological injuries . . . [because] [s]uch perfunctory claims of injuries and generalized complaints of lost privileges are insufficient to establish a liberty interest at the summary judgment stage"); *Jackson v. Relf*, No. 19-CV-193, 2021 WL 2801136, at *2 (N.D.N.Y. July 6, 2021) (granting summary judgment for defendant corrections personnel because the plaintiff's "conclusory statements" about the conditions of his 118 days' confinement "fail[ed] to raise a genuine dispute of material fact" as to whether the "confinement was an atypical hardship under *Sandin*").

Because Plaintiff has "failed to adduce[] admissible record evidence from which a rational factfinder could conclude that the conditions . . . during this 1[04]-day period were more severe than normal SHU conditions," the Court grants Defendants' Motion. *Henry v. Dinelle*, No. 10-CV-456, 2011 WL 5975027, at *10 (N.D.N.Y. Nov. 29, 2011) (granting summary judgment where the court found that the plaintiff's confinement in SHU for 150 days under the standard SHU restrictions—the same as those at issue here—were not "more severe than normal SHU conditions" and thus did not raise a constitutional violation); *see also Colon*, 2021 WL 3774115, at *6 (collecting cases to support granting summary judgment where the plaintiff failed to create genuine issues of fact that the plaintiff suffered from an atypically or anomalously difficult stay in SHU notwithstanding generalized allegations of mental and emotional hardship).

## 2. Personal Involvement & Qualified Immunity

Plaintiff alleges that Venettozzi failed to "entertain and address [Plaintiff's] due process and constitutional rights violation." (Compl. 16.) But the only references the Complaint or its attachments make to Venettozzi are (1) a memorandum Venettozzi wrote to the Superintendent of Sullivan Correctional Facility reversing the Superintendent's hearing determination and expunging Plaintiff's record "based on a recommendation from the NYS Attorney General's office," (*id.* at 39), and (2) a memorandum Venettozzi wrote to Plaintiff similarly advising Plaintiff of the reversal, (*id.* at 40). In other words, outside of this seemingly ministerial role of disseminating updates to pertinent parties, "[t]he Complaint does not allege that Venettozzi was a participant in any . . . aspect of the hearing." *Brown*, 2019 WL 4194432, at *7.

Curiously, Defendants' moving papers imply that Venettozzi affirmed the disciplinary decision before subsequently reversing it, arguing that Venettozzi is entitled to qualified immunity for having affirmed the appeal. (*See* Defs.' Mem. 7–9.) Yet, Defendants do not point to any evidence in which Venettozzi was involved in the appeal process. Indeed, Plaintiff only alleges that his "Superintendent hearing that was held . . . on December 15, 2015, was Administratively affirmed on February 2, 2016." (Compl. 19.) It is logical to presume that Venettozzi was somehow involved, as he is the Director of Inmate Discipline in the Facility's SHU. Yet, again, no evidence specifically establishes that Venettozzi was involved. Defendants actually—if inadvertently—make this very point, observing that Plaintiff's claims speak to Venettozzi's alleged "*fail[ure]* . . . to 'entertain and address'" Plaintiff's allegations. (Defs.' Mem. 7 (emphasis added) (quoting Compl. 16).) In other words, there is no dispute that Venettozzi was not involved in the hearing or punishment at issue. Under this assumption, Venettozzi's memoranda only helped to effectuate Plaintiff's desired relief, meaning he could

not be said to have "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Therefore, were it the case that Venettozzi did not affirm Plaintiff's hearing, he would be absolved of liability and entitled to summary judgment for lack of personal involvement. *See, e.g.*, *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *6 (S.D.N.Y. Feb. 5, 2021) (holding that "[f]ailing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint fatally defective on its face" and dismissing multiple defendants about whom the plaintiff failed to allege were personally involved in the alleged constitutional violation); *Trotman v. Herod*, No. 19-CV-3788, 2020 WL 5043934, at *3 (E.D.N.Y. Aug. 26, 2020) (observing that a § "1983 complaint that does not allege the personal involvement of a defendant thus fails as a matter of law" and dismissing defendants who were present when misconduct occurred but did not participate therein as a result of a lack of personal involvement); *accord Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) ("Having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face." (quoting *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir. 1976))).

      Defendants argue that even if the Court were to assume that Venettozzi did in fact affirm Plaintiff's appeal, Venettozzi is entitled to qualified immunity. (Defs.' Mem. 7–9.) Qualified immunity, of course, "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court agrees.

It remains "an open question in the Second Circuit whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Brown*, 2019 WL 4194432, at *7 (quoting *Colon v. Annucci*, 344 F. Supp. 3d 612, 630–31 (S.D.N.Y. 2018)). Indeed, "[t]here has been a long-running split in the Second Circuit as to 'whether an allegation that a defendant affirmed a disciplinary proceeding is sufficient to establish' that defendant's personal involvement in the underlying constitutional violation." *George v. County of Westchester*, No. 20-CV-1723, 2021 WL 4392485, at *13 (S.D.N.Y. Sept. 24, 2021) (quoting *Samuels v. Fischer*, 168 F. Supp. 3d 625, 643 (S.D.N.Y. 2016)). Thus, even assuming Venettozzi's affirmance, "the split in guidance entitles Venettozzi to qualified immunity." *Jackson v. Annucci*, No. 20-CV-2008, 2021 WL 2581340, at *6 (S.D.N.Y. June 23, 2021); *see also Colon*, 344 F. Supp. 3d at 631 ("[B]ecause [the] [p]laintiff alleges no facts showing that [the defendant, who allegedly affirmed a disciplinary disposition,] knew or reasonably should have known that that this action violated [the] [p]laintiff's due process rights, and the law is not so clear that a reasonable appeal officer would have known that, [the defendant] is entitled to qualified immunity."); *Lebron*, 2017 WL 365493, at *9 (finding that "qualified immunity attaches" because "not every reasonable official would understand that" the "failure to correct a procedural due process violation on appeal violates an inmate's constitutional rights"). Accordingly, the Court grants Defendants' Motion with respect to Plaintiff's claims against Venettozzi.

III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 41), mail a copy of this Opinion to Plaintiff at the address listed on the docket, enter judgment for Defendants, and close this case.

SO ORDERED.

DATED:   May 19, 2022
         White Plains, New York

KENNETH M. KARAS
United States District Judge